Floyd W. Bybee, #012651
**BYBEE LAW CENTER, PLC**
2473 S. Higley Road
Suite 104-308
Gilbert, AZ 85295-3023
Office: (480) 756-8822
Fax: (480) 302-4186
floyd@bybeelaw.com

Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Stacy Brown;<br><br>     Plaintiff,<br><br>v.<br><br>Thunderbird Collection Specialists, Inc.;<br><br>     Defendant. | No.<br><br>**COMPLAINT**<br><br>(Jury Trial Demanded) |

**I.   Preliminary Statement**

1.  Plaintiff brings this action for damages based upon Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§1692 *et seq*. (hereinafter "FDCPA").  Plaintiff seeks an award of statutory damages, actual damages, court costs and attorney's fees.

## II.   Statutory Structure of FDCPA

2. Congress passed the FDCPA to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses. FDCPA § 1692.

3. The FDCPA is designed to protect consumers who have been victimized by unscrupulous debt collectors regardless of whether a valid debt exists. Baker v. G.C. Services Corp., 677 F.2d 775, 777 (9th Cir. 1982).

4. The FDCPA defines a "consumer" as any natural person obligated or allegedly obligated to pay any debt. FDCPA § 1692a(3).

5. The FDCPA defines "debt" as any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject or the transaction are primarily for personal, family, or household purposes. FDCPA § 1692a(5).

6. The FDCPA defines "debt collector' as  any person who uses any instrumentality of interstate commerce

|   |   |
|---|---|
| 1 | or the mails in any business the principal purpose |
| 2 | of which is the collection of any debts, or who |
| 3 | regularly collects or attempts to collect, directly |
| 4 | or indirectly, debts owed or due or asserted to be |
| 5 | owed or due to another. FDCPA § 1692a(6). |
| 6 | 7. Any debt collector who fails to comply with the |
| 7 | provisions of the FDCPA is liable for any actual |
| 8 | damage sustained; statutory damages up to $1,000; |
| 9 | attorney's fees as determined by the Court and costs |
| 10 | of the action. FDCPA § 1692k. |

### III.  JURISDICTION

8. Jurisdiction of this Court, over this action and the parties herein, arises under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. §§ 1331. Venue lies in the Phoenix Division of the District of Arizona as Plaintiff's claims arose from acts of the Defendant perpetrated therein.

### IV.  PARTIES

9. Plaintiff is an individual residing in Pinal County, Arizona.

10. Plaintiff is allegedly obligated to pay a consumer debt and is a "consumer" as that term is defined by FDCPA § 1692a(3).

11. Defendant Scottsdale Collection Specialists, Inc. ("TCS") is an Arizona corporation doing business as

1     a collection agency.
2  12. TCS is licensed as a collection agency licensed by
3     the Arizona Department of Financial Institutions,
4     license number 0005528.
5  13. TCS collects or attempts to collect debts owed or
6     asserted to be owed or due another.
7  14. TCS is a "debt collector" as that term is defined by
8     FDCPA § 1692a(6).

### V.   FACTUAL ALLEGATIONS

10 15. Plaintiff allegedly owes two medical debts to Summit
11     Healthcare RCM and WMEP Inc. for medical services
12     provided to her son.
13 16. Sometime prior to December 2009, Summit and WMEP
14     assigned their alleged debts to TCS for collection
15     purposes.
16 17. In December 2009, TCS began a campaign of harassing
17     telephone calls to Plaintiff at her home and at work
18     in an attempt to coerce payment of these two debts.
19 18. Between December 2009 and April 2010, TCS repeatedly
20     telephoned Plaintiff in an attempt to collect these
21     debts.
22 19. On Saturday morning December 19, 2009, TCS called
23     Plaintiff several times.
24 20. Frustrated with the phone constantly ringing from
25     TCS's calls, Plaintiff finally answered the phone

1     and asked "What the hell do you want?"
2 21. Plaintiff told Theresa that she was stressed out as
3     a result of the constant calls and that she wanted
4     all future communications with her to be by mail and
5     that she did not want any more calls from TCS to her
6     home or place of employment.
7 22. Plaintiff also told Theresa that she was afraid of
8     being fired from her work because of the continuous
9     collection calls from TCS at her work and in her
10     classroom.
11 23. Immediately after Plaintiff hung up, Theresa called
12     back again but Plaintiff did not answer.
13 24. Theresa did leave the following message:
14         "Hello Stacy this is Theresa calling from TCS. I really hope that you don't
15         talk to your children with that mouth. I do need a return call. My number is
16         480-946-3299. My direct extension if 223."
17
18 25. Later that morning, Plaintiff sent an email to TCS
19     at the following email addresses:
20     pjean@hunderbirdcollections.com;
21     info@thunderbirdcollections.com; and
22     lhatfield@thunderbirdcollections.com.
23 26. In her email, Plaintiff stated that she disputed
24     owing the debts TCS was attempting to collect, had
25     never received a bill, and asked for proof from TCS

-5-

1     that she was obligated to pay these debts.
2  27. Plaintiff also stated in her email to TCS that "...
3     I demand that you do not call my home or my
4     employer." and that "You may correspond by mail
5     only."
6  28. Plaintiff also instructed TCS in this email that
7     "Your employees will not call me, my employer, or
8     any one that I know regarding this matter."
9  29. On December 21, 2009, TCS sent Plaintiff a letter
10    concerning the alleged debts.  (A copy of the
11    December 21, 2009 letter is attached hereto as
12    Exhibit A).
13  30. In Exhibit A, TCS states:

> "MAY I SUGGEST YOU HAVE YOUR ATTORNEY DETERMINE YOUR LIABILITY ON THIS OBLIGATION.  IF YOU DO NOT WISH TO SEEK THE ADVICE OF AN ATTORNEY, YOU MUST CONTACT THIS OFFICE AND ARRANGE SETTLEMENT OF YOUR DEBT IMMEDIATELY TO AVOID FURTHER COLLECTION PROCEDURE.
>
> IT IS IN YOUR BEST INTEREST TO RESPOND AT ONCE."

20  31. When Plaintiff read Exhibit A, she believed that TCS
21    was threatening to file suit against her and that
22    she needed to find an attorney to represent her.
23  32. On January 7, 2010, TCS sent Plaintiff another
24    letter concerning the alleged debts.  (A copy of the
25    January 7, 2010 letter is attached hereto as Exhibit

1  B).
2  33. In Exhibit B, TCS states:
3      "YOU HAVE FAILED TO MAKE ACCEPTABLE ARRANGEMENTS WITH US REGARDING THE ABOVE REFERENCED ACCOUNT.
5      WILL IT BE AGREEABLE WITH YOU FOR US TO CONTACT YOUR EMPLOYER AND ARRANGE TO HAVE THIS DEDUCTED FROM YOUR SALARY?
7      PLEASE REPLY IMMEDIATELY."
8  34. When Plaintiff read Exhibit B, she believed that TCS was threatening to call her employer about the debts it was attempting to collect.
11 35. In January 2010, Theresa called Plaintiff several times at work during school hours.
13 36. Even though she wanted to ignore the calls from TCS to her work, Plaintiff felt that she had to answer the phone during school hours because it might be a parent calling about one of her students.
17 37. When Plaintiff answered one of these phone calls from TCS, Plaintiff told Theresa that TCS could not continue to call her at work because she was a teacher and she could not receive collection agency calls in her classroom while she was teaching. Plaintiff also told Theresa that she could lose her job if the calls continued.
24 38. Theresa told Plaintiff that she did not care, and that she would continue to call Plaintiff at work.

       Theresa also told Plaintiff that it was her fault that TCS was interrupting her classroom because Plaintiff owed the debt. Theresa also said that the calls would stop only when the debt was paid in full.

39. On January 11 or 12, 2010, after receiving several calls in her classroom from TCS, Plaintiff dismissed her class and called TCS.

40. Frustrated and upset because of the constant harassment, Plaintiff told the man who answered the phone for TCS that she was a school teacher and that she could not continue to receive collection calls at work. Plaintiff also told this man that she had received several calls that day from TCS, and that she had previously asked TCS both over the phone and in writing to stop the calls.

41. The TCS employee told Plaintiff that TCS would continue to call as often as they wanted until she paid the debt.

42. When Plaintiff told the TCS employee that the calls were illegal and that they were calling her in her classroom, he stated again that TCS would continue to call as often as they wanted until the debt was paid.

43. As soon as Plaintiff hung up the phone, she found

      that she had received another message on her school phone from Theresa while she was on the phone with TCS.

44. On January 19, 2010, TCS sent Plaintiff another letter concerning the debts together with copies of a billing statement from Summit Medical, and an emergency outpatient record.

45. On February 12, 2010, the calls from TCS to Plaintiff's home and work started up again.

46. TCS called Plaintiff numerous times at work and at home during the period between February 12, 2010 and April 21, 2010.

47. TCS left messages for Plaintiff on the school's voice mail system on February 16, 2010, March 5, 2010, March 9, 2010, April 1, 2010, April 8, 2010, April 12, 2010, and April 21, 2010.

48. None of the messages left by TCS contained notice that TCS was attempting to collect a debt as required by 15 U.S.C. § 1692e(11).

49. None of the messages left on March 5, 2010, March 9, 2010, March 11, 2010, April 1, 2010, April 8, 2010, April 12, 2010, and April 21, 2010 included a meaningful disclosure of the caller's identity as required by 15 U.S.C. § 1692d(6).

50. On June 1, 2010, TCS sent another letter to

1    Plaintiff concerning the alleged debts. (A copy of
2    the June 1, 2010 letter is attached hereto as
3    Exhibit C).
4 51. In Exhibit C, TCS states:

> "GARNISHMENTS OR
> COURT ACTION IS EXPENSIVE!
>
> BECAUSE THE PROCESS SERVER AND THE COURT MUST BE PAID FOR THE SERVICES THEY RENDER AND ALL SUCH COSTS ARE CHARGED TO THE DEBTOR.  HOWEVER, A CREDITOR SELDOM RESORTS TO COURT ACTION IF THE DEBTOR ACTS IN GOOD FAITH.
>
> SAVE MONEY
>
> THIS IMPORTANT MATTER IS BEING DEFERRED FOR FIVE (5) DAYS SO THAT YOU MAY PROVE YOUR GOOD FAITH BY PAYING THIS ACCOUNT IN FULL NOW, OR BY CALLING THIS OFFICE TO ARRANGE FOR PAYMENT."

52. Again, when Plaintiff re3ceived Exhibit C, she was fearful that TCS was now going to file suit against her and garnish her wages when she went back to work in August.

53. TCS has continued to call and harass Plaintiff at work despite her numerous verbal and written requests to stop.

54. TCS's actions has caused Plaintiff to worry about losing her job as a school teacher, and also that her co-workers would hear the messages left by TCS at her school.

55. TCS's collection actions set forth herein were

- 10 -

1 | intentional, willful, and in gross or reckless
2 | disregard of Plaintiff's rights and part of its
3 | persistent and routine practice of debt collection.
4 | 56. In the alternative, Defendant's actions were
5 | negligent.

## VI. Causes of Action

### a. Fair Debt Collection Practices Act

57. Plaintiff repeats, realleges, and incorporates by reference the foregoing paragraphs.
58. Defendants' violations of the FDCPA include, but are not necessarily limited to, 15 U.S.C. §§ 1692c(a)(3), 1692c(c), 1692d, 1692d(5), 1692d(6), 1692e, 1692e(4), 1692e(5), 1692e(10), and 1692e(11).

## VII. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered against Defendant for:

a) Statutory damages of $1,000 for each Defendant pursuant to FDCPA § 1692k;

b) Actual damages in amount to be determined at trial;

c) Costs and reasonable attorney's fees pursuant to §1692k; and

1   d) Such other relief as may be just and proper.

3   DATED   December 14, 2010  .

                              s/ Floyd W. Bybee
                              Floyd W. Bybee, #012651
                              **BYBEE LAW CENTER, PLC**
                              2473 S. Higley Road
                              Suite 104-308
                              Gilbert, AZ 85295-3023
                              Office: (480) 756-8822
                              Fax: (480) 302-4186
                              floyd@bybeelaw.com

                              Attorney for Plaintiff